IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**RICK WOOLFOLK and**                                                        **PLAINTIFFS**
**EVA K. WOOLFOLK**

**V.**                                                                       **NO. 3:19-CV-17-DMB-RP**

**DAVID A. RHODA**                                                   **DEFENDANT**

**ORDER**

Before the Court is David Rhoda's "Motion to Dismiss Plaintiffs' Complaint." Doc. #56.

**I**
**Procedural History**

On December 12, 2018, Rick Woolfolk and Eva Woolfolk filed a complaint against David Rhoda in the Chancery Court of Panola County, Mississippi, regarding a contract for the sale of real property. Doc. #2. On January 28, 2019, Rhoda, asserting diversity jurisdiction, removed the state court action to the United States District Court for the Northern District of Mississippi. Doc. #1. With leave of the Court,[1] the Woolfolks filed an amended complaint on May 10, 2019.[2] Doc. #27. The amended complaint seeks specific performance and a monetary judgment based on Rhoda's alleged "failure and refusal to tender [the] deed … in direct violation of [the] Contract," as well as punitive damages and attorneys' fees based on alleged bad faith. *Id.* at PageID ##234–37. Rhoda filed an answer and counterclaim[3] on October 4, 2019. Doc. #39.

---

[1] *See* Doc. #20.

[2] The Woolfolks initially filed an amended complaint on April 9, 2019. Doc. #21. On Rhoda's motion, United States Magistrate Judge Roy Percy struck the amended complaint because it was not the proposed amended complaint attached to the motion to amend. Doc. #26. In the order striking the amended complaint, Judge Percy allowed the Woolfolks five days to file the proposed amended complaint. *Id.*

[3] Rhoda's counterclaim seeks a declaratory judgment that the contract is void; recission of the contract—for fraud and material breach; and reformation of the contract—for mutual mistake, fraud, and ambiguity. Doc. #39 at 19–27. Alternatively, Rhoda claims entitlement to a variety of monetary damages, including punitive damages, for breach of contract, tortious breach of contract, breach of the implied covenant of good faith and fair dealing, detrimental reliance,

On October 10, 2019, the Woolfolks filed a suggestion of bankruptcy indicating that they had "filed a voluntary [Chapter 13] petition in the United States Bankruptcy Court for the Northern District of Mississippi" on September 29, 2016. Doc. #44 at 1. Rhoda filed a "Motion to Dismiss Plaintiffs' Complaint" pursuant to Federal Rule of Civil Procedure 12(c) on February 3, 2020. Doc. #56. After receiving a requested extension, the Woolfolks responded to the motion on March 2, 2020. Doc. #67. Rhoda did not reply.

## II
## Standard of Review

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). "To withstand a motion to dismiss, a complaint must allege more than labels and conclusions, as a formulaic recitation of the elements of a cause of action will not do. It must state a plausible claim for relief, rather than facts merely consistent with liability." *Heinze v. Tesco Corp.*, 971 F.3d 475, 2020 WL 4814094, at *2 (5th Cir. 2020) (cleaned up). The Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* However, the Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.*

When considering a Rule 12(c) motion, "the court is generally limited to the contents of the pleadings, including attachments thereto." *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015) (internal quotation marks omitted). But the court may consider publicly

---

unjust enrichment, and intentional and/or negligent infliction of emotional distress. *Id.* at 27–31.

available documents, including bankruptcy documents, at the Rule 12 stage. *See Ruiz v. Brennan*, 851 F.3d 464, 468 (5th Cir. 2017) ("[The Court] may take judicial notice of matters of public record."); *see Van Duzer v. U.S. Bank Nat'l Ass'n*, 582 F. App'x 279, 283–84 (5th Cir. 2014) (affirming that "the district court did not err in considering" "public documents from the [plaintiffs'] bankruptcy proceeding").

### III
### Factual Allegations

On May 15, 2008, the Woolfolks executed an "Agreement to Sell Real Estate" with Rhoda and his wife Charlotte[4] to purchase a home at 308 Hightower Street in Sardis, Mississippi. Doc. #27 at PageID #233. The purchase price was $80,000, with $5,000 being credited by Rhoda to the Woolfolks for repairs to the property, and the remaining $75,000 being paid in $600 per month payments. *Id.* The Woolfolks made monthly payments "through October of 2018 when the entire sum of $70,000.00 had been paid." *Id.* at PageID #234. However, Rhoda "refused to tender a deed" to the property to the Woolfolks. *Id.*

### IV
### Analysis

Rhoda argues that the Woolfolks' claims should be dismissed because they "were not properly disclosed to the Bankruptcy Court and are now barred by judicial estoppel." Doc. #57 at 5. The Woolfolks acknowledge that they "failed to list their equity claims to their home … in their Bankruptcy Petition" but state that "there was no intent to deceive the Court." Doc. #68 at PageID ##537–38.

"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334 (5th Cir.

---

[4] Charlotte is now deceased. Doc. #27 at PageID #233.

2004). "The purpose of the doctrine is to protect the integrity of the judicial process, by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999) (quotation marks and alterations omitted). "Against the backdrop of the bankruptcy system judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system." *United States ex rel. Long v. GSD & M Idea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015) (alterations omitted). Thus, "[j]udicial estoppel is particularly appropriate where, as here, a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." *Jethroe v. Omnova Sols., Inc.*, 412 F.3d 598, 600 (5th Cir. 2005).

"Judicial estoppel has three elements: (1) The party against whom it is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *In re Flugence*, 738 F.3d 126, 129 (5th Cir. 2013). "The burden to prove judicial estoppel is on the party invoking the doctrine." *RDS Real Estate, LLC v. Abrams Grp. Constr., LLC*, No. 1:15cv361, 2016 WL 4926193, at *2 (S.D. Miss. Sept. 15, 2016).

### A. Inconsistent Prior Position

"[T]he Bankruptcy Code and Rules impose upon bankruptcy debtors an express, affirmative duty to disclose all assets, including contingent and unliquidated claims." *Coastal Plains*, 179 F.3d at 207–08 (emphasis omitted) (citing 11 U.S.C. § 521(1)). "The duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Id.* at 208 (quoting *Youngblood Grp. v. Lufkin Fed. Sav. & Loan Ass'n,* 932 F. Supp. 859, 867 (E.D. Tex. 1996)).

4

The Woolfolks "concede[] that the subject property at 308 Hightower Street was not included on their initial Bankruptcy Schedules." Doc. #68 at PageID #534. The Woolfolks' initial bankruptcy filings failed to disclose an interest in the property or any claims against Rhoda. *See* Doc. #56 at PageID #394, #398. Thus, the Woolfolks have taken a position inconsistent with their prior position in the Bankruptcy Court.

### B. Prior Position Accepted by Court

Rhoda argues that the Bankruptcy Court has accepted the Woolfolks' prior position by confirming the Woolfolks' Chapter 13 plan. Doc. #57 at 8. The Woolfolks respond that judicial estoppel should not apply because the bankruptcy "is continuing and no discharge has been received." Doc. #68 at PageID #535.

"[J]udicial acceptance does not require a formal judgment; rather, it only requires that the first court had adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Allen v. C & H Distribs., L.L.C.*, 813 F.3d 566, 573 (5th Cir. 2015). The Woolfolks' Chapter 13 plan was confirmed on January 23, 2017. Doc. #56 at PageID #452. However, the Woolfolks did not amend their petition to reflect an interest in the property or their claims against Rhoda until October 21, 2019. *Id.* at PageID #466, #472. Thus, the Bankruptcy Court accepted the Woolfolks' prior position when it confirmed their plan. *See Jethroe*, 412 F.3d at 601 (second element of the judicial estoppel test satisfied where the bankruptcy court had confirmed the plan but case was closed without discharge).

### C. Inadvertence

"Judicial estoppel does not apply if the party acted inadvertently." *Allen*, 813 F.3d at 573. The Woolfolks may establish inadvertence "by proving either that they did not know of the inconsistent position or that they had no motive to conceal it from the court." *Id.* (internal

5

quotation marks and alterations omitted).

### 1. Knowledge

Rhoda argues that the Woolfolks "had knowledge of their claims regarding the Property years before filing their Petition in the Bankruptcy Court" and "the very fact that they prepared the Complaint … while only partially done in performing their confirmed Plan is direct evidence of their knowledge of said claims." Doc. #57 at 10. The Woolfolks do not provide any argument that they lacked knowledge of their claims and instead focus on whether they had a motive to conceal their claims. Doc. #68 at PageID ##535–537. When the Woolfolks initially filed bankruptcy in 2016, they had knowledge of their interest in the property under the alleged 2008 contract. With regard to the claims against Rhoda, the Woolfolks clearly had knowledge of their claims when they filed their complaint in the state court on December 12, 2018. However, they did not amend their bankruptcy petition until October 21, 2019, over ten months later. Under these circumstances, the Court concludes that the Woolfolks had knowledge of their claims for at least ten months before amending their petition.

### 2. Motive

Rhoda argues that the Woolfolks have a motive to conceal their claims and interest in the property because their bankruptcy plan "requires them to pay significantly less than the total amount of their unsecured debt," and they have "failed to update their ongoing expenses to reflect the fact that they are no longer paying the $600.00 a month rental payment." Doc. #57 at 11. The Woolfolks respond that there is no motive because (1) they would not "gain any financial windfall from failing to disclose their claims" as the property would be exempt as their homestead and Rhoda would be a secured creditor who would be paid in full; (2) they voluntarily disclosed the claim after "they became aware of their mistake;" (3) their $600 monthly payment was reflected

6

on their initial petition; and (4) the failure to disclose "was the result of misunderstanding and miscommunication" with their bankruptcy attorney. Doc. #68 at PageID ##535–537.

"[T]he motivation sub-element is almost always met if a debtor fails to disclose a claim or possible claim to the bankruptcy court … because of potential financial benefit resulting from the nondisclosure." *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 262 (5th Cir. 2012). Despite the Woolfolks' argument that they did not have a motive to conceal because any interest in the property would be exempt, whether the property would be exempt is a decision for the Bankruptcy Court, not the debtor, and does not remove their duty to disclose. *See In re Flugence*, 738 F.3d at 130 ("Whether a particular asset should be available to satisfy creditors is often a contested issue, and the debtor's duty to disclose assets—even where he has a colorable theory for why those assets should be shielded from creditors—allows that issue to be decided as part of the orderly bankruptcy process."). Additionally, the Woolfolks had a duty to disclose their claims against Rhoda, which include a request for punitive damages. The Court therefore concludes that the Woolfolks had a motive to conceal their interest in the property and claims against Rhoda. Accordingly, the Court finds that their nondisclosure was not inadvertent.[5]

Because each of the judicial estoppel factors are met, the Court concludes that the doctrine of judicial estoppel prohibits the Woolfolks from bringing this action against Rhoda.

## V
## Conclusion

Rhoda's motion to dismiss [56] is **GRANTED**. The Woolfolks' claims are **DISMISSED with prejudice**. Accordingly, the only matter remaining in this case is Rhoda's counterclaim

---

[5] The Woolfolks' remaining arguments, which together assert that the failure to disclose was a mistake based on a miscommunication with their bankruptcy attorney that was voluntarily corrected upon discovery, is not sufficient to overcome this conclusion. *See In re Vioxx Prods. Liab. Litig.*, MDL No. 1657, 2012 WL 304165, at *3 (E.D. La. July 25, 2012) (debtor's reliance on bankruptcy attorney "to make the correct disclosures" could not establish inadvertence because she was "bound by her attorney's conduct and her own signature on her bankruptcy petition.").

against the Woolfolks.

    **SO ORDERED**, this 24th day of September, 2020.

                                        **/s/Debra M. Brown**
                                        **UNITED STATES DISTRICT JUDGE**